IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:11-CV-680-D

| | | |
|---|---|---|
| JIMMY EARP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| NOVARTIS PHARMACEUTICALS CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

On May 14, 2014, following a seven-day jury trial and nine hours of deliberation, a jury returned a defense verdict for Novartis Pharmaceuticals Corporation ("Novartis" or "defendant") in Jimmy Earp's ("Earp" or "plaintiff") products-liability action. See [D.E. 227]. The jury found that Earp failed to prove that Novartis's unreasonable failure to warn Earp concerning the use of the prescription drugs Aredia or Zometa proximately caused Earp's osteonecrosis of the jaw. See [D.E. 228, 229]. On May 28, 2014, Novartis timely filed a motion seeking $22,051.53 in costs. See [D.E. 230]. On June 11, 2014, Earp objected to Novartis's motion for costs, and asked the court to disallow the costs, or alternatively, to reduce them. See [D.E. 232, 233]. On June 18, 2014, Novartis responded to Earp's objections. See [D.E. 238]. As explained below, the court grants Novartis's motion for costs and awards Novartis $20,847.43 in costs.

I.

Federal Rule of Civil Procedure 54(d)(1) governs a post-judgment motion for an award of costs. See Fed. R. Civ. P. 54(d)(1). Rule 54(d)(1) provides that "costs—other than attorney's fees—should be allowed to the prevailing party." Id. A "prevailing party" is "a party in whose favor

a judgment is rendered" or "one who has been awarded some relief by the court." Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 603 (2001) (quotation and alteration omitted). Rule 54(d)(1) "gives rise to a presumption in favor of an award of costs to the prevailing party." Teague v. Bakker, 35 F.3d 978, 996 (4th Cir. 1994); see Delta Air Lines, Inc. v. August, 450 U.S. 346, 352 (1981).

When awarding costs to the prevailing party, the court looks to federal law to determine the scope of the award. See Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 441–43 (1987), superseded on other grounds by statute, 42 U.S.C. § 1988(c). Section 1920 of Title 28 of the United States Code lists taxable costs. 28 U.S.C. § 1920; see Crawford Fitting Co., 482 U.S. at 441 ("[Section] 1920 defines the term 'costs' as used in Rule 54(d).").[1] Section 1920's list of recoverable costs is exhaustive as to "expenses that a federal court may tax under the discretionary authority found in Rule 54(d)." Crawford Fitting Co., 482 U.S. at 441–42. Accordingly, "Rule 54(d) does not provide authority to tax as costs those expenses not enumerated in [section] 1920." Herold v.

---

[1] Taxable costs under section 1920 include:

(1) Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under section 1923 . . . ;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services . . . ."

28 U.S.C. § 1920.

2

Hajoca Corp., 864 F.2d 317, 323 (4th Cir. 1988); see Crawford Fitting Co., 482 U.S. at 441–42.

A court's local rules also inform a party's ability to recover costs. Pursuant to Federal Rule of Civil Procedure 83, "a district court . . . may adopt and amend rules governing its practice." Fed. R. Civ. P. 83(a)(1). Local rules promulgated pursuant to Rule 83 "have the force and effect of law, and are binding upon the parties and the court which promulgated them." Jackson v. Beard, 828 F.2d 1077, 1078 (4th Cir. 1987) (quotation omitted). District courts have "broad discretion to interpret their local rules [and] [o]nly in rare cases will [appellate courts] question the exercise of discretion in connection with the application of . . . local rules." Qualls v. Blue Cross of Cal., Inc., 22 F.3d 839, 842 n.2 (9th Cir. 1994) (citation and quotations omitted); Silicon Knights, Inc. v. Epic Games, Inc., 917 F. Supp. 2d 503, 510 (E.D.N.C. 2012); AM Props. v. Town of Chapel Hill, 202 F. Supp. 2d 451, 453–54 (M.D.N.C. 2002). District courts routinely apply local rules regulating the nature of recoverable costs. See, e.g., Silicon Knights, Inc., 917 F. Supp. 2d at 510; Couram v. S.C. Dep't of Motor Vehicles, Civil Action No. 3:10-00001-MBS, 2011 WL 6115509, at *2–3 (D.S.C. Dec. 8, 2011) (unpublished); Bland v. Fairfax Cnty., No. 1:10CV1030 (JCC/JFA), 2011 WL 5330782, at *5 (E.D. Va. Nov. 7, 2011) (unpublished). This court has promulgated a local rule governing the recovery of costs. See Local Civil Rule 54.1.[2] Accordingly, this local rule further

---

[2] Local Civil Rule 54.1(c)(1) provides a non-exhaustive list of normally recoverable costs:

(a) those items specifically listed on the bill of costs form. The costs incident to the taking of depositions (when allowable as necessarily obtained for use in the litigation) normally include only the reporter's fee and charge for the original transcript of the deposition;

(b) premiums on required bonds;

(c) actual mileage, subsistence, and attendance allowances for necessary witnesses at actual costs, but not to exceed the applicable statutory rates, whether they reside in or out of the district;

3

refines the scope of recoverable costs.

II.

A.

On September 1, 2006, Earp sued Novartis alleging various claims concerning two prescription drugs that Novartis manufactures, Aredia and Zometa. Earp received the two drugs via prescription from his two oncologists as part of his treatment for multiple myeloma, a typically fatal and painful form of cancer. The action was transferred to the United States District Court for the Middle District of Tennessee for Multi-District Litigation ("MDL") proceedings. After discovery, the MDL court transferred the case back to this court. See Earp v. Novartis Pharm. Corp., No. 5:11-CV-680-D, 2013 WL 4854488, at *1 (E.D.N.C. Sept. 11, 2013) (unpublished).

On September 11, 2013, the court granted in part and denied in part Novartis's motion for summary judgment. See id. The court granted summary judgment to Novartis on Earp's breach of express warranty and design defect claims, and Earp abandoned his strict liability and manufacturing defect claims. See id. at *5–6. The court denied Novartis's motion for summary judgment on Earp's breach of implied warranty claim. See id. Thus, two claims survived for trial: negligent failure to

---

(d) one copy of the trial transcript for each party represented by counsel.

Local Civil Rule 54.1(c)(1). Local Civil Rule 54.1(c)(2) also identifies items "normally not taxed, without limitation" as

(a) witness fees, subsistence, and mileage for individual parties, real parties in interest, parties suing in representative capacities, and the officers and directors of corporate parties;

(b) multiple copies of depositions;

(c) daily copy of trial transcripts, unless prior court approval has been obtained.

Local Civil Rule 54.1(c)(2).

4

warn and breach of the implied warranty of merchantability. See id. Patricia Earp's loss of consortium claim also survived summary judgment, but Patricia Earp dismissed that claim at the final pretrial conference. See [D.E. 168].

At the close of Earp's evidence, the court granted judgment as a matter of law to Novartis on Earp's breach of implied warranty claim. See [D.E. 244] 19–21; Fed. R. Civ. P. 50(a). Thus, Earp's negligent-failure-to-warn claim was the sole claim that went to the jury.

The verdict form asked the jury to answer a series of questions. See [D.E. 228]; see also [D.E. 246]. The jury found that Earp had proven that Aredia and/or Zometa medically caused him to develop osteonecrosis of the jaw. See [D.E. 228]. The jury also found that Novartis unreasonably failed to warn Earp concerning the use of Aredia and Zometa when Earp was receiving Aredia or Zometa via prescriptions from his treating oncologists, Dr. Kritz and Dr. Yoffe. See id. The jury, however, then found that Earp had failed to prove that Novartis's unreasonable failure to warn concerning the use of Aredia and Zometa was a proximate cause of the condition of Earp's jaw. See id.

In connection with proximate cause, the court instructed the jury as follows:

> In considering the issue of proximate cause, you must consider what warning Novartis reasonably should have provided based upon what Novartis knew or reasonably should have known at a given time when Mr. Earp was receiving Aredia or Zometa via prescription from Drs. Kritz or Yoffe and whether a different warning at that time would have changed the result for Mr. Earp's jaw. Thus, if you find that Mr. Earp has proved that Novartis should have given a different warning or instruction at a particular time when he was receiving Aredia or Zometa via prescription from Drs. Kritz or Yoffe, you must then consider whether Mr. Earp also has proved, by a preponderance of the evidence, that a different warning or instruction at the time he was receiving Aredia or Zometa via prescription from Drs. Kritz or Yoffe would have resulted in different medical or dental treatment for him, that he would have accepted such different medical or dental treatment, and that such different medical or dental treatment would have prevented or mitigated his osteonecrosis of the jaw.

5

> Finally, as to the third issue, on which Mr. Earp has the burden of proof, if you find, by a preponderance of the evidence, that Novartis's unreasonable failure to provide an adequate warning or instruction concerning the use of Aredia and Zometa was a proximate cause of Mr. Earp's osteonecrosis of the jaw, then it would be your duty to answer this third issue "Yes" in favor of Mr. Earp. If, on the other hand, you fail to so find, then it would be your duty to answer "No" in favor of Novartis.
>
> As the verdict form indicates, if you answer "No," the case is over. You will consider the fourth issue only if you answer "Yes" to this third issue.

[D.E. 246] 24–25.[3] "[P]roximate cause is ordinarily a question of fact for the jury, to be resolved by the exercise of good common sense in the consideration of the evidence of each particular case." Williams v. Carolina Power & Light Co., 296 N.C. 400, 403, 250 S.E.2d 255, 258 (1979) (quotation omitted); Gaines ex rel. Hancox v. Cumberland Cnty. Hosp. Sys., Inc., 203 N.C. App. 213, 219, 692 S.E.2d 119, 122 (2010); Hill v. Williams, 144 N.C. App. 45, 56, 547 S.E.2d 472, 479 (2001); see Adams v. Mills, 312 N.C. 181, 192–93, 322 S.E.2d 164, 172 (1984) (defining proximate cause).

During closing arguments, the attorneys for Earp and Novartis argued their respective positions concerning proximate cause. Compare [D.E. 245] 26, 29, 31–32, 54, 60–70 (plaintiff's argument), with [D.E. 245-1] 24–25, 46–51, 72–74 (defendant's argument). Novartis essentially argued that Earp failed to prove (1) that a different warning would have resulted in different medical or dental treatment for Earp; (2) that any different medical or dental treatment for Earp would have prevented the condition of Earp's jaw, or (3) that Earp would have declined his doctors' recommendation to take Aredia or Zometa if he received a different warning about osteonecrosis of the jaw. See [D.E. 245-1] 24–25, 46–51, 72–74.

---

[3] The court's jury instruction is materially indistinguishable from Earp's proposed proximate cause instruction, see [D.E. 143] 30–31, and Earp did not object to the proximate cause instruction that the court gave. Compare [D.E. 245] 6–7 (Earp objecting to different portion of proposed proximate cause instruction), with id. 19 (court removing that portion of proposed proximate cause instruction to which Earp objected).

6

Proximate cause was for the jury to decide. In rejecting Earp's arguments concerning proximate cause, the jury was entitled to weigh the evidence and arguments and conclude that a different warning would not have resulted in different medical or dental treatment for Earp from either Earp's oncologists or Earp's dentists. Likewise, the jury was entitled to weigh the evidence and arguments and conclude that any different medical or dental treatment for Earp would not have changed the result for Earp's jaw. Furthermore, the jury was entitled to weigh the evidence and arguments and, inter alia, to reject Earp's incredible testimony that even though he had never rejected the recommended treatment of his oncologists during his multi-year battle with multiple myeloma, undergoing even a high-risk and sometimes-fatal stem-cell transplant, he would have rejected his oncologists' recommendation to take Aredia or Zometa from 1998 to 2004 and never would have taken the drugs if he had been warned about the possible side effect of osteonecrosis of the jaw. [D.E. 243-1] 20–21, 24–29; cf. United States v. Burgos, 94 F.3d 849, 867–68 (4th Cir. 1996) (en banc) (jury entitled to disbelieve a witness's testimony and to believe the opposite to be true); United States v. Mejia, 82 F.3d 1032, 1038 (11th Cir. 1996) (same), abrogated on other grounds by Bloate v. United States, 559 U.S. 196 (2010). The jury weighed the evidence and arguments concerning proximate cause and ruled against Earp. The court then entered a judgment in Novartis's favor. Accordingly, Novartis is the prevailing party. See Buckhannon Bd. & Care Home, Inc., 532 U.S. at 603.[4]

---

[4] At the close of all the evidence, Earp failed to move for judgment as a matter of law under Rule 50(a) of the Federal Rules of Civil Procedure. Barring plain error, a party's failure to move for judgment as a matter of law forecloses appellate review of the sufficiency of the evidence to support a jury verdict. See, e.g., Price v. City of Charlotte, 93 F.3d 1241, 1248–49 (4th Cir. 1996); Singer v. Dungan, 45 F.3d 823, 827–28 (4th Cir. 1995); Bristol Steel & Iron Works, Inc. v. Bethlehem Steel Corp., 41 F.3d 182, 186–87 (4th Cir. 1994). In addition, Earp's failure to move for a new trial under Rule 50(b) of the Federal Rules of Civil Procedure after the jury returned its verdict precludes him from seeking a new trial on appeal on the basis of insufficiency of the evidence. See, e.g., Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc., 546 U.S. 394, 399–407 (2006); Belk, Inc. v. Meyer Corp.,

7

B.

Although Novartis was the prevailing party, Earp urges the court to deny Novartis any costs. In support, Earp states that he acted in good faith in bringing the suit and that awarding costs would be unjust. See Pl.'s Objs. [D.E. 233] 1–3; cf. Cherry v. Champion Int'l Corp., 186 F.3d 442, 446 (4th Cir. 1999).

A district court has discretion to deny costs to the prevailing party. See Crawford Fitting Co., 482 U.S. at 441–42; Cherry, 186 F.3d at 446; Silicon Knights, Inc., 917 F. Supp. 2d at 509; Couram, 2011 WL 6115509, at *2. A court "must justify its decision to deny costs by articulating some good reason for doing so." Cherry, 186 F.3d at 446 (quotations and alteration omitted); see Teague, 35 F.3d at 996. A losing party's good faith is insufficient, standing alone, to justify denying costs to a prevailing party. See Cherry, 186 F.3d at 446. Instead, a losing party's good faith is a "virtual prerequisite" to denying costs to a prevailing party. Id. (quotation omitted). If a court finds that the losing party acted in good faith, the court may deny an award of costs when "there would be an element of injustice in a presumptive cost award." Id.; see Delta Air Lines, 450 U.S. at 355 n.14. The factors that a court should consider to determine whether such an element of injustice would arise from an award of costs are: "(1) misconduct by the prevailing party; (2) the unsuccessful party's inability to pay the costs; (3) the excessiveness of the costs in a particular case; (4) the limited value of the prevailing party's victory; or (5) the closeness and difficulty of the issues decided." Ellis v. Grant Thornton LLP, 434 F. App'x 232, 235 (4th Cir. 2011) (per curiam) (unpublished); see Cherry, 186 F.3d at 446–47; Silicon Knights, Inc., 917 F. Supp. 2d at 509–10.

---

U.S., 679 F.3d 146, 154–60 (4th Cir. 2012); A Helping Hand, LLC v. Balt. Cnty., 515 F.3d 356, 369–70 (4th Cir. 2008).

8

In pursuing his case, Earp acted in good faith. Accordingly, the court analyzes Earp's argument that awarding costs to Novartis would be unjust. See Ellis, 434 F. App'x at 235; Cherry, 186 F.3d at 446; Silicon Knights, Inc., 917 F. Supp. 2d at 509–10. In doing so, the court examines the five Ellis factors. See Ellis, 434 F. App'x at 235.

First, the court considers whether the prevailing party engaged in misconduct. See id. Here, Novartis did not engage in misconduct. Just as Earp proceeded in good faith in pursuing his claims, Novartis proceeded in good faith in defending itself. Thus, this factor does not support denying costs to Novartis.

Second, the court considers the unsuccessful party's inability to pay costs. See id. at 235–36; Teague, 35 F.3d at 996–97. This factor warrants denying costs only when the losing party proves that he is "of such modest means that it would be unjust or inequitable to enforce Rule 54(d)(1) against [him]." Cherry, 186 F.3d at 447.

Other than Earp's conclusory assertion that if he had to pay costs, then it would impose an undue financial hardship on him [D.E. 233-1], Earp has not documented his financial condition or discussed any agreement that he has with his lawyers or anyone else concerning costs that proves that awarding costs to Novartis would be "unjust or inequitable." Cherry, 186 F.3d at 447. As Novartis notes in its response, Earp's conclusory declaration fails to document his finances and fails to discuss whether Earp has an agreement with his attorneys concerning costs, and whether any such agreement obligates his attorneys or the MDL Plaintiffs' Steering Committee to pay such costs. Likewise, Earp's declaration fails to mention whether Earp is the beneficiary of a contract with a third-party financier concerning the payment of costs. See Novartis Resp. [D.E. 238] 2 n.7 & Ex. 3. Such agreements are not uncommon in this type of litigation. See id. "Merely stating that one is of 'modest means' is insufficient to overcome the presumption that the losing party must pay the

prevailing party's costs." Farrar & Farrar Dairy, Inc., v. Miller-St. Nazianz, Inc., No. 5:06-CV-160-D, 2012 WL 776945, at *6 (E.D.N.C. Mar. 8, 2012) (unpublished) (quoting Wyne v. Medo Indus., Inc., 329 F. Supp. 2d 584, 588 (D. Md. 2004)); see Hogan v. Novartis Pharm. Corp., Civil Action No. 06-260 (BMC), 2012 WL 5898473, at *5 (E.D.N.Y. Nov. 12, 2012) (unpublished), aff'd, 548 F. App'x 672 (2d Cir. 2013) (unpublished); Eberhart v. Novartis Pharm. Corp., 282 F.R.D. 697, 699–700 (N.D. Ga. 2012); Schwarz & Schwarz of Va., LLC v. Certain Underwriters at Lloyd's, No. 6:07-CV-00042, 2010 WL 452743, at *2 (W.D. Va. Feb. 8, 2010) (unpublished); Synergistic Int'l, L.L.C. v. Korman, Civil No. 2:05CV49, 2007 WL 517676, at *6 (E.D. Va. Feb. 8, 2007) (unpublished). Accordingly, Earp has failed to prove that he is unable to pay the costs, and this factor does not support denying costs to Novartis.

Third, the court considers the excessiveness of the costs in a particular case. See Ellis, 434 F. App'x at 235. Here, the court has reviewed the costs that Novartis seeks and finds that Novartis is not seeking costs that are excessive. Thus, this factor does not support denying costs to Novartis.

Fourth, the court considers the limited value of the prevailing party's victory. See id. Here, Novartis's victory was not of limited value. Earp made serious allegations about Novartis and Novartis's prescription drugs, and Novartis vigorously defended itself. Thus, this factor does not support denying costs to Novartis.

Fifth, the court considers "the closeness and difficulty of the issues decided." Id.; Teague, 35 F.3d at 996. "The closeness of a case is judged not by whether one party clearly prevails over another, but by the refinement of perception required to recognize, sift through[,] and organize relevant evidence, and by the difficulty of discerning the law of the case." White & White, Inc. v. Am. Hosp. Supply Corp., 786 F.2d 728, 732–33 (6th Cir. 1986). Courts that have denied costs based on this factor generally have done so following a lengthy trial that adjudicated novel issues. See,

10

e.g., Ellis, 434 F. App'x at 235 ("The case was hotly contested at trial and in the previous appeal."); White & White, Inc., 786 F.2d at 732 (upholding denial of award of costs on the basis of complex legal issues when "the matter consumed 80 trial days, required 43 witnesses, produced 800 exhibits, generated almost 15,000 pages of transcript, and begat a 95 page opinion"); Turner v. United States, 736 F. Supp. 2d 980, 1024 (M.D.N.C. 2010); Va. Panel Corp. v. MAC Panel Co., 203 F.R.D. 236, 237–38 (W.D. Va. 2001).

Although this case went to trial, the trial was not lengthy and the case did not involve novel issues. Rather, the case involved a straightforward application of North Carolina law to Earp's dispute with Novartis. With respect to Earp's negligent-failure-to-warn claim, the jury received extensive instructions, see [D.E. 246] 3–41], and had to resolve various factual disputes and apply North Carolina law. It did so. See [D.E. 228]. Simply put, the issues decided in this case do not support denying costs to Novartis. Accordingly, having examined the five Ellis factors, the court rejects Earp's request to deny costs to Novartis.

C.

Alternatively, Earp argues that the court should deny certain costs to Novartis. See Pl.'s Objs. 3–6. First, Earp argues that Novartis should not recover $5,348.70 in costs that Novartis seeks for deposition transcripts for six witnesses who were deposed in this case, but who did not testify at trial. See id. 4.

Section 1920(2) permits a party to recover "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case." 28 U.S.C. § 1920(2); Cherry, 186 F.3d at 448–49. Pursuant to section 1920(2), Novartis seeks to recover $12,666.60 in deposition transcript costs. See [D.E. 230-2] 2. The deposition transcripts concern thirteen witnesses, and include Earp's experts, treating physicians, and family members. See id.

11

Although Novartis did not use six of the deposition transcripts at trial because Earp did not call those six witnesses, the deposition transcripts were "necessarily obtained for use in the case." 28 U.S.C. § 1920(2). Notably, "[i]t is not necessary for depositions to be used in trial ... for a party to recover those costs." Ray Commc'ns, Inc. v. Clear Channel Commc'ns, No. 2:08-CV-24-BO, 2011 WL 3207805, at *3 (E.D.N.C. July 26, 2011) (unpublished). Rather, the costs of deposition transcripts are recoverable when taking "a deposition is reasonably necessary at the time of its taking." LaVay Corp. v. Dominion Fed. Sav. & Loan Ass'n, 830 F.2d 522, 528 (4th Cir. 1987); Ray Commc'ns, Inc., 2011 WL 3207805, at *3. Here, Novartis deposed Earp's experts, treating physicians, and family members in order to be prepared if Earp called them at trial. See Novartis Resp. 6. Novartis could not have reasonably anticipated that Earp would not call six of these witnesses, and had to be prepared if he did. Thus, Novartis necessarily obtained the deposition transcripts for use in the case, and the court awards Novartis $12,666.60 for deposition transcripts. See 28 U.S.C. § 1920(2); LaVay Corp., 830 F.2d at 528; Ray Commc'ns, Inc., 2011 WL 3207805, at *3.

Next, Earp argues that Novartis should not recover $5,812.27 in witness fees, subsistence costs, and mileage costs that Novartis incurred concerning various witnesses. See Pl.'s Objs. 3–5; cf. [D.E. 230] 2. The court has reviewed the witness fees, subsistence expenses, and mileage. The court finds that Novartis should recover all of the witness fees, subsistence, and mileage that it requested, except for those concerning Dr. Diane Young. See, e.g., Silicon Knights, Inc., 917 F. Supp. 2d at 512; Swan Lake Holdings, LLC v. Yamaha Golf-Car Co., No. 3:09-CV-228, 2011 WL 1869389, at *3 (N.D. Ind. May 13, 2011) (unpublished); Belk, Inc. v. Meyer Corp., Civil No. 3:07-CV-168-DSC, 2010 WL 3474918, at *11–12 (W.D.N.C. Aug. 31, 2010) (unpublished). As for Dr. Young, Local Civil Rule 54.1(c)(2)(a) precludes recovery of costs for "witness fees, subsistence, and

12

mileage for individual parties, real parties in interest, parties suing in representative capacities, and the officers and directors of corporate parties." Local Civil Rule 54.1(c)(2)(a). Dr. Young testified that she is Novartis's Vice President of Clinical Research and Development for Latin America. See [D.E. 240-1] 57. Thus, Dr. Young is a Novartis officer. As such, the court denies Novartis's request for $1,204.10 in costs related to Dr. Young's subsistence and milage. Accordingly, the court awards Novartis $4,608.17 in costs for witness fees, subsistence expenses, and mileage. See 28 U.S.C. § 1920(3); Local Civil Rule 54.1(c)(1)(c).

Finally, Earp argues that Novartis is not entitled to recover certain copying costs. See Pl.'s Objs. 4. The court has reviewed the record and finds that Novartis's request for $3,572.66 in copying costs are properly documented, that the copies were "necessarily obtained for use in the case," and that the copying costs are recoverable under section 1920(4). See, e.g., Trimper v. City of Norfolk, 58 F.3d 68, 77 (4th Cir. 1995); Silicon Knights, Inc., 917 F. Supp. 2d at 512; Farrar & Farrar Dairy, Inc., 2012 WL 776945, at *4–5; Mann v. Heckler & Koch Def., Inc., No. 1:08cv611 (JCC), 2011 WL 1599580, at *8 (E.D. Va. Apr. 28, 2011) (unpublished); Francisco v. Verizon S., Inc., 272 F.R.D. 436, 445–46 (E.D. Va. 2011). Thus, the court awards Novartis $3,572.66 in costs related to copying materials necessarily obtained for use in the case. See 28 U.S.C. § 1920(4).

III.

In sum, the court GRANTS defendant's motion for costs [D.E. 230], DENIES plaintiff's motion to disallow costs [D.E. 232], and AWARDS Novartis $20,847.43 in costs. The clerk shall tax total costs of $20,847.43 against plaintiff.

SO ORDERED. This 19 day of August 2014.

JAMES C. DEVER III
Chief United States District Judge

13